UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


CARL BURNIE WELLBORN,

        Petitioner,

                                  CASE NO. 1:05-CV-346

v.

                                  HON. ROBERT J. JONKER

MARY BERGHUIS,

        Respondent.

_____/


**ORDER AND JUDGEMENT**
**APPROVING REPORT AND RECOMMENDATION**

      The  Court has reviewed the Magistrate Judge's Report and Recommendation (docket # 38)

and Petitioner's Objection to Report and Recommendation (docket # 43).  Under the Federal Rules

of Civil Procedure, where, as here, a party has objected to portions of a Report and

Recommendation, "[t]he district judge . . . has a duty to reject the magistrate judge's

recommendation unless, on de novo reconsideration, he or she finds it justified."  12 WRIGHT,

MILLER, & MARCUS, FEDERAL PRACTICE AND PROCEDURE § 3070.2, at 381 (2d ed. 1997).

Specifically, the Rules provide that:

> The district judge must determine de novo any part of the magistrate
> judge's disposition that has been properly objected to.  The district
> judge may accept, reject, or modify the recommended disposition;
> receive further evidence; or return the matter to the magistrate judge
> with instructions.

FED R. CIV. P. 72(b)(3).  De novo review in these circumstances requires at least a review of the

evidence before the Magistrate Judge.  *Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

The Court has reviewed de novo the claims and evidence presented to Magistrate Judge Brenneman; the Report and Recommendation itself; and Petitioner's Objection.  After its review, the Court finds the Report and Recommendation to be both factually sound and legally correct.  Mr. Wellborn was convicted in Kent County Circuit Court on one count of first degree criminal sexual conduct, and two counts of second degree criminal sexual conduct.  The evidence presented against Mr. Wellborn was graphic and overwhelming, as detailed by the Magistrate Judge in his Report and Recommendation.  Nothing in Mr. Wellborn's objections establishes a basis to undermine the validity of the jury's conviction.

Mr. Wellborn's first objection to the Report and Recommendation reiterates his claim that his earlier acquittal in Montcalm County Circuit Court for separate charges of sexual abuse should have been admissible at trial in Kent County Circuit Court (Pet.'s Objections to Report and Recommendation, docket # 43, at 1-9.) He argues that exclusion of evidence of the earlier acquittal violated his rights under the Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth Amendment.  (*Id.*)  The Report and Recommendation has already meticulously and accurately analyzed whether the exclusion of acquittal testimony violated the Constitution.  (*See* Report and Recommendation, docket # 38, at 19-23.) Mr. Wellborn's objections fall particularly flat because, as the Report and Recommendation points out, even assuming that the exclusion of acquittal testimony violated Mr. Wellborn's constitutional rights, only harmless error ensued, because Mr. Wellborn "still managed to introduce evidence of his acquittal during the Kent County trial, and the evidence overwhelmingly demonstrated that [Mr. Wellborn] was guilty." (*Id.* at 20.)

Mr. Wellborn also recapitulates his claims of ineffective assistance of counsel, tied to the same underlying factual predicate. (Pet.'s Objections to Report and Recommendation, docket # 43, at 2-9.) The Report and Recommendation has already carefully and accurately explained why Mr. Wellborn's claims of ineffective assistance fail. (*See* Report and Recommendation, docket # 38, at 23-28.) His objections identify nothing that attacks the reasoning of the Magistrate Judge. In particular, the record overwhelmingly establishes Petitioner's guilt, as found by the jury, and there is no plausible reason to believe that an effort by trial counsel to admit evidence of Petitioner's prior acquittal on unrelated charges would have changed the result. This is particularly true in this case where Petitioner managed to get the fact of his prior acquittal before the jury despite the court's pre-trial ruling barring the evidence based on state evidentiary law.

Mr. Wellborn is now also asserting that the trial in Kent County created double jeopardy by trying him on the new criminal sexual conduct charges despite his earlier acquittal on unrelated charges. (Pet.'s Objections to Report and Recommendation, docket # 43, at 5.) Mr. Wellborn has never raised the issue in the "double jeopardy" package before, and it is procedurally improper for him to do so for the first time in his objections to the Magistrate's Report and Recommendation on his federal habeas claim. Moreover, even if the claim were procedurally proper, it could not possibly succeed on the merits because the record plainly indicates that the Montcalm County proceeding involved separate charges of sexual abuse. (See Report and Recommendation, docket # 38, at 25.)

Finally, Mr. Wellborn asserts again a violation of his constitutional right to a jury drawn from a fair cross-section of the community. (Amendment of Objection to Report and Recommendation, docket # 43, at 1-3.) Mr. Wellborn is a Caucasian. He now wishes to object that

the jury venire empaneled for his case was too much like him, and not drawn from a fair cross-section of the community.  Mr. Wellborn relies principally on a newspaper article indicating that an entirely unintentional computer glitch may have resulted in jury venires that under-represented African Americans near the time of Petitioner's Kent County criminal trial.  Even though Mr. Wellborn is white, and any computer glitch resulted in a venire more like Mr. Wellborn than he would otherwise have drawn, he is entitled to assert a fair cross section claim under applicable law. *See Holland v. Illinois*, 493 U.S. 474, 477 (1990) ("[T]he Sixth Amendment entitles every defendant to object to a venire that is not designed to represent a fair cross section of the community, whether or not the systematically excluded groups are groups to which he himself belongs.")  Mr. Wellborn is not, however, excused from complying with the well-established state court rule that he lodge an objection to the composition of the jury venire at the time of trial if he wishes to preserve the question for subsequent challenge.  This he did not do.  To the contrary, his counsel expressly stated that the defense was satisfied with the jury panel.  (Report and Recommendation, docket # 38, at 30.)

The rule that a litigant must challenge the composition of the jury venire at trial to preserve possible objections is no mere technicality.  It serves a critical function in ensuring access to and preservation of proofs necessary to address the issue on the merits.  In this case, for example, once the parties accepted the jury panel, there was no need to record the race or other potentially relevant demographic characteristics of the jurors involved.  Accordingly, the record of the case does not include any information regarding the racial composition of the original jury venire, the jurors excused for cause, the jurors peremptorily excused or the jurors ultimately seated on the jury.  The trial occurred seven years ago, in March of 2002, and such information may well be unavailable

4

even after extensive factual digging.  Both state and federal courts reasonably require litigants to object to a jury venire at the time of trial to avoid such practical difficulties.  After all, if a litigant is in fact satisfied with the appearance of the venire – and there is no reason to doubt that a white defendant such as Mr. Wellborn was satisfied with a jury venire and ultimate jury that was, if anything, too much like him – there is no good reason to stop the proceedings, especially when the underlying trial requires the logistical and emotional burden of presenting testimony of several minor victims related by blood or marriage to the Petitioner.

Mr. Wellborn admits he failed to make any objection to the jury venire at the time of trial, but he claims this is not fatal to his claim.  Citing *Smith v. Berghuis*, 543 F.3d 326 (6th Cir. 2008), Mr. Wellborn argues that the Magistrate Judge erred in concluding that his claim is procedurally barred on habeas review.  (*Id.*)  *Smith* did involve the merits of a fair cross section claim, but it did not address the dispositive procedural default issue in this case.  In *Smith*, the defendant properly objected to the composition of the jury venire panel and petit jury at trial, preserving the issue for appeal.  *See Smith v. Berghuis*, 543 F.3d 326, 330 (6th Cir. 2008).  Mr. Wellborn did not.  Accordingly, *Smith* is ultimately of no help to Mr. Wellborn on the procedural default issue.

Of course, even a procedural default may be excused upon a showing of cause and actual prejudice, or to avoid a fundamental miscarriage of justice, as noted by the Magistrate Judge. (Report and Recommendation, docket # 38, at 33.)  The overwhelming evidence of Petitioner's guilt is enough to preclude any possible finding of a fundamental miscarriage of justice.  That, combined with Petitioner's status as a Caucasian seeking to lodge a belated complaint to a predominantly or all white jury might also be thought to preclude a finding of actual prejudice, though the Supreme Court has indicated that at least in some cases prejudice may be presumed based on a violation of

the fair cross section requirement.  *See Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (Prejudice is presumed where discrimination tainted grand jury selection.)  But even assuming Petitioner could establish presumed prejudice here, he cannot meet his burden of establishing cause for his procedural default.  Petitioner absolutely personally observed the racial composition of his jury venire and finally selected jury.  He says there were only two African Americans on the 70-person venire, and none on his final jury.  Apparently he was content with this as a white defendant because his counsel said the defense had no objection to the panel.  If Petitioner was unhappy with the distribution he could have said so even if he had no reason to know at the time the particulars of a possible computer glitch that contributed to the composition of the array.  (*See* Report and Recommendation, docket # 38, at 33-34, 36-37 (discussing *People v. Hubbard*, 552 N.W. 2d 493 (Mich. Ct. App. 1996); *People v. Oliphant*, 399 Mich. 472 (1976); *People v. Bryant*, No. 21442, 2004 WL 513664 (Mich. Ct. App. March 16, 2004); *People v. Barnes*, No. 244590, 2004 WL 1121901 (Mich. Ct. App. Jan. 15, 2004).)

Petitioner's reliance on *Amadeo v. Zant*, 486 U.S. 214 (1988) is misplaced.  *Amadeo* involved a death penalty case in which the district attorney and jury commissioners of Putnam County, Georgia, intentionally engineered a scheme to under-represent African Americans and women in the County's juries, and to conceal the scheme by keeping the under-representation sufficiently subtle to fall within the presumptively acceptable statistical guidelines of prevailing case law.  (Report and Recommendation, docket # 38, at 35.)  The very point of the intentional and diabolical scheme was to exclude African Americans and women in a way that made it virtually impossible to detect.  A litigant looking at any given venire, intentionally engineered to under-represent African Americans and women, was not automatically on notice of a problem.  Under

those unique circumstances, the Court refused to set aside that the trial court's factual finding that defense counsel did not intentionally bypass a jury challenge, and permitted the habeas claim to proceed.

This case is entirely different.  There is no allegation – much less evidence – of any intentional effort to exclude any particular racial or gender group from the jury venire.  At most, Petitioner claims based on a newspaper article that an inadvertent computer glitch for some undetermined period of time may have had the unintended effect of limiting the number of African Americans summoned for jury duty.  Moreover, in this case, unlike *Amadeo*, there was no subtlety at all in the actual number, according to Petitioner's claims.  Petitioner says there were only two African Americans on the 70-person venire, and none on his final jury.  A litigant who was actually dissatisfied with the number of available African American jurors in this scenario was plainly on notice that these percentages of African Americans did not reflect the population percentages in the County.  That was all Petitioner needed to lodge an objection, if he wished to do so.  He did not.  Instead, he affirmatively accepted the jury panel that looked just like him.

The Court is mindful of three decisions from the Eastern District of Michigan that find cause sufficient to exclude procedural default based on the Kent County computer glitch at issue here.  The cases are, to some extent, factually distinguishable.  In the first place, none involved a petitioner who affirmatively accepted the jury panel in the trial court after seeing that the panel, if anything, was more demographically like the petitioner than the petitioner had reason to expect based on population alone.  Second, none of the cases involve a situation detailing overwhelming trial evidence of a petitioner's guilt.  But despite these distinctions, the Court must respectfully disagree with these decisions to the extent they read *Amadeo* to excuse procedural default on these

facts.  This Court believes that the decisions fail to distinguish between the intentional scheme at issue in *Amadeo*, and the inadvertent glitch at issue here.  The Court further believes that the decisions fail to recognize that the petitioners in their cases, unlike the petitioner in *Amadeo*, were on notice of a possible jury venire objection simply from looking at the racial composition of the people appearing in court.  Indeed, in one of the Eastern District decisions, the Court noted that the petitioner might be able to establish the merits of his claim based on "absolute disparity" alone. *Carter v. Lafler*, No. O6-CV-10552, 2009 WL 649889, at *5 (E.D. Mich. March 10, 2009).  If "absolute disparity" may be enough to establish the merits of  petitioner's claim, then *a fortiori* it has to be enough to require petitioner to object to the venire at the time of trial.  Accordingly, this Court respectfully declines to follow his colleagues in the Eastern District on this issue.

### Certificate of Appealability

Before a habeas petitioner may appeal the Court's dismissal of his petition, a certificate of appealability must issue.  28 U.S.C. § 2253(c)(1)(A) (Lexis through P.L. 110-180); FED. R. APP. P. 22(b)(1).  Thus the Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue.  28 U.S.C. § 2253(c)(3); FED. R. APP. P. 22(b)(1); In re *Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir. 1997).

A certificate of  appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this showing, the petitioner must demonstrate that reasonable jurists could "debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented

were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 894 (1983)).

When a district court rejects a habeas petition on the merits, the required "substantial showing" is "straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack*, 529 U.S. at 484. But when a district court denies a habeas claim on procedural grounds without addressing the claim's merits, the petitioner must demonstrate both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484 (emphasis added). If the district court invokes a plain procedural bar to dispose of the case, "a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted." *Id.*

The Court is denying Petitioner's petition on the merits to the extent that Petitioner claims a violation of his rights under the Confrontation Clause under the Sixth Amendment and the Due Process Clause under the Fourteenth Amendment, and to the extent that Petitioner claims a violation of his right to effective assistance of counsel under the Sixth Amendment. The Court believes that no reasonable jurist would find its conclusions on these issues "debatable or wrong." *See* Slack, 529 U.S. 484. Therefore, the Court will not issue a certificate of appealability on these questions.

The Court is denying Petitioner's claim concerning the jury venire composition on procedural grounds, but in a unique setting. Reasonable jurists could certainly conclude either that

the district court has erred in denying the jury venire composition claim on procedural grounds or that Petitioner should be allowed to proceed further.  Indeed, this has already happened in three similar cases.  *See Parks v. Warren*, 574 F. Supp.2d 737, 744-47 (E.D. Mich. 2008); *Powell v. Howes*, No. 05-71345, 2007 WL 1266398 (E.D. Mich. May 1, 2007) ; *Carter v. Lafler*, No. O6-CV-10552, 2009 WL 649889 (E.D. Mich. March 10, 2009)  The Court will therefore issue a certificate of appealability on this question.

**ACCORDINGLY, IT IS ORDERED** that the Report and Recommendation of the Magistrate Judge (docket # 38) is approved and adopted as the opinion of the Court.

**IT IS FURTHER ORDERED** that:

1.    Petitioner's petition for a writ of habeas corpus is **DENIED**.

2.    A certificate of appealability as to Petitioner's claims under the Confrontation Clause under the Sixth Amendment and the Due Process Clause under the Fourteenth Amendment, and as to Petitioner's claim of ineffective assistance of counsel under the Sixth Amendment, is **DENIED**.

3.    A certificate of appealability as to Petitioner's claim concerning his right under the Sixth Amendment to a jury drawn from a fair cross-section of the community is **GRANTED**.

_____ /s/ Robert J. Jonker _____
ROBERT J. JONKER
UNITED STATES DISTRICT JUDGE

Dated:  March 31, 2009